1    Frank S. Hedin (SBN 291289)
     HEDIN LLP
2    535 Mission Street, 14th Floor
     San Francisco, CA 94105
3    Telephone: (305) 357-2107
     Facsimile:  (305) 200-8801
4    Email: fhedin@hedinllp.com

5    *Counsel for Plaintiffs and the Putative Classes*

6              UNITED STATES DISTRICT COURT FOR THE

7                 CENTRAL DISTRICT OF CALIFORNIA

8

9    DENNIS BATEMAN, CHRISTIAN          Case No. 2:25-cv-2200
     BURES, MEGAN CARTER, JOHN
     FORGAS, LANCE GOBLE, DANIEL          **CLASS ACTION COMPLAINT**
10   GOLEZ, ELIZABETH GOSEIN-
     VASQUEZ, THOMAS HAMILTON,           **DEMAND FOR JURY TRIAL**
11   KELLI LANGTON, JESSICA SIAS,
     and MAX REINISCH, individually and
12   on behalf of all others similarly
     situated;
13
14                   Plaintiffs,

     v.
15
     FABLETICS, INC.,
16
17                   Defendant.

18

19

20

Plaintiffs Dennis Bateman, Christian Bures, Megan Carter, John Forgas, Lance Goble, Daniel Golez, Elizabeth Gosein-Vasquez, Thomas Hamilton, Kelli Langton, Jessica Sias, and Max Reinisch, individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to each of themselves, on the investigation of counsel, and on information and belief as to all other matters.

## NATURE OF THE ACTION

1.     Plaintiffs Dennis Bateman, Christian Bures, Megan Carter, John Forgas, Lance Goble, Daniel Golez, Elizabeth Gosein-Vasquez, Thomas Hamilton, Kelli Langton, Jessica Sias, and Max Reinisch bring this Class Action Complaint against Fabletics, Inc. ("Defendant" or "Fabletics") for Defendant's illegal conduct in connection with its VIP Membership Program ("the Program"). Defendant misleads customers into joining its automatically renewing, subscription-based Program by touting the value of a so-called "Promotional Member Credit."  In exchange for paying a $59.95 monthly membership fee, Program members receive a monthly Promotional Member Credit.  The Promotional Member Credit purports to allow a Program member to purchase any single item or two-piece outfit from Defendant for up to $100.  However, the vast majority of the individual items or two-piece outfits on offer – nearly all, in fact – do not even exceed the cost of the $59.95 monthly membership fee.  Thus,

Fabletics lures customers to join a monthly recurring subscription program with the promise of a Promotional Member Credit that exceeds the $59.95 monthly membership fee, and that can be used on a variety of items of different styles and types of clothing items when, in fact, based on Defendant's pricing model, it would be nearly impossible for a Program member to use a Promotional Member Credit to purchase a single item or outfit exceeding $59.95, much less $100.00.

2.    In addition to its deceptive pricing, Defendant further harms Program members by refusing to honor Promotional Membership Credits received in exchange for the $59.95 monthly fee under the Program, which are voided if unused within twelve months after they are issued in violation of Cal. Civ. Code § 1749.45 *et. seq*. (hereinafter the California Gift Certificate Statute).

3.    Further, at various times, Defendant has failed to fairly apprise Program members that their VIP Membership Program subscription automatically renews on a month-to-month basis.  Defendant therefore automatically charges Program members without providing notice or obtaining consent every month.

4.    Accordingly, Plaintiffs bring this action individually and on behalf of all purchasers of Defendant's VIP Membership Program nationwide, and on behalf of a subclass of Florida consumers.  Based on Defendant's unlawful conduct, Plaintiffs seek damages, restitution, injunctive relief, and reasonable attorneys' fees and costs for (i) violation of California's Unfair Competition Law ("UCL"), Cal.

Bus. & Prof. Code §§ 17200, *et seq*.; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*; and (iii) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et. seq.

## JURISDICTION AND VENUE

5.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23.

6.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

The Court has personal jurisdiction over Defendant because Defendant is headquartered and maintains its principal place of business in California. Further, Defendant intentionally marketed, promoted, and sold its products and services, including its VIP Membership Program, to Plaintiffs and other consumers in California, and knowingly collected and presently collects substantial revenue from such transactions in California, such that Defendant conducts significant business in California and otherwise intentionally and purposefully avails itself of the markets and the benefits of doing business in California.

1

### THE PARTIES

2      7.    Plaintiff Dennis Bateman is a resident and citizen of Sacramento

3  County, California.  Plaintiff Bateman was at all times mentioned herein a member

4  of Defendant's VIP Membership Program

5      8.    Plaintiff Christian Bures is a resident and citizen of Pinellas County,

6  Florida.  Plaintiff Bures was at all times mentioned herein a member of Defendant's

7  VIP Membership Program.

8      9.    Plaintiff Megan Carter is a resident and citizen of Duval County,

9  Florida.  Plaintiff Carter was at all times mentioned herein a member of Defendant's

10  VIP Membership Program.

11      10.    Plaintiff John Forgas is a resident and citizen of Pasco County, Florida.

12  Plaintiff Forgas was at all times mentioned herein a member of Defendant's VIP

13  Membership Program.

14      11.    Plaintiff Lance Goble is a resident and citizen of Riverside County,

15  California. Plaintiff Goble was at all times mentioned herein a member of

16  Defendant's VIP Membership Program.

17      12.    Plaintiff Daniel Golez is a resident and citizen of Los Angeles County,

18  California. Plaintiff Golez was at all times mentioned herein a member of

19  Defendant's VIP Membership Program.

20

CLASS ACTION COMPLAINT

13.     Plaintiff Elizabeth Gosein-Vasquez is a resident and citizen of Broward County, Florida.  Plaintiff Gosein-Vasquez was at all times mentioned herein a member of Defendant's VIP Membership Program.

14.     Plaintiff Thomas Hamilton is a resident and citizen of St. Johns County, Florida.  Plaintiff Hamilton was at all times mentioned herein a member of Defendant's VIP Membership Program.

15.     Plaintiff Kelli Langton is a resident and citizen of Orange County, Florida. Plaintiff Langton was at all times mentioned herein a member of Defendant's VIP Membership Program.

16.     Plaintiff Jessica Sias is a resident and citizen of Contra Costa County, California.   Plaintiff Sias was at all times mentioned herein a member of Defendant's VIP Membership Program.

17.     Plaintiff Max Reinisch is a resident and citizen of San Mateo County, California.  Plaintiff Reinisch was at all times mentioned herein a member of Defendant's VIP Membership Program.

18.     Defendant Fabletics, Inc. is an activewear retailer that mostly sells its products online.  Defendant is organized and incorporated under the laws of Delaware and maintains its corporate headquarters and principal place of business in El Segundo, California, in Los Angeles County.

## **Defendant's VIP MEMBERSHIP Program**

19.    Fabletics claims it is the "largest digitally native activewear brand in the world."[1]  Its success is "driven by its innovative VIP Membership Program serving over 2 million loyal members."[2]

20.    Defendant charges customers a $59.95 "monthly membership fee" for its VIP Membership Program.  Consumers enroll in the Program via Defendant's website and via other sales channels.  Fabletics automatically bills its customers on the 6th day of each month unless the customer opts out for the month via the website between the 1st and 5th of the month.

21.    In exchange for the $59.95 monthly membership fee, each month a customer receives a Promotional Member Credit, which carries an extra $40.05 in purchasing value, thus entitling the member to $100.00 in purchasing value (the price of the $59.95 monthly membership fee plus the additional $40.05) to spend on Defendant's website or at its brick-and-mortar stores.  This value may be used on any individual item or any two-piece outfit, up to $100.00. Multiple Promotional Member Credits may be used at once, but only on a one credit-to-one item (or two-piece outfit) basis.  As such, multiple credits cannot be combined to buy a single item or two-piece outfit.

---

[1] https://corporate.fabletics.com/news-releases/news-release-details/fabletics-launches-first-ever-scrubs-collection-made-and-medical
[2] *Id.*

22.    Fabletics reduces the prices of its items by 20-50% for VIP Membership Members.

23.    The Fabletics website, fabletics.com, is the primary means by which customers join the Program.  Fabletics uses a number of tools to drive potential customers to fabletics.com, including targeted social media advertising featuring celebrity spokespeople with embedded links to the website and an affiliate program where individuals can share links to the website in exchange for a commission paid on each new membership.

24.    Fabletics touts the Promotional Member Credit as a central feature of the Program on fabletics.com.  On the "How Membership Works" section of its website, Fabletics features a short explanatory video stating, "one credit can buy you an item or two-piece outfit on Fabletics.com up to $100."[3]  Similarly, the same page features the following infographic, which displays specific phrases in bold, including the $59.95 monthly fee and the $100 value of the credit, as a means to

**Member Credits 101**

· On the 6th of each month, you'll be **charged $59.95** for your exclusive membership benefits. These benefits include a promotional Member Credit which unlocks our best savings when redeemed. Member Credits can be redeemed for **any 2-piece outfit or item up to $100**, online or in-store.

· **Don't want to be charged for the month?** Visit the site between the 1st and 5th of the month, click "Skip the Month", and you won't be charged

· Any **unused promotional Member Credits expire after 12 months.** (Don't worry, we'll remind you!)

· You can now use your **monthly member credits on Yitty.com** as well

---

[3] https://www.fabletics.com/nmp/how-it-works

7

CLASS ACTION COMPLAINT

signal to the customer the value proposition of signing up for the VIP Membership Program:

25.    The $100 value of a Promotional Member Credit is deceptive as there are virtually no items available at the VIP Membership pricing level (inclusive of a 20-50% discount) that come close to costing $100.  In fact, most items Defendant sells do not exceed the $59.95 monthly membership fee *even before* the 20-50% discount is applied.

26.    Moreover, customers are led to believe that the items on offer have a significantly higher value and that therefore, purchasing a $59.95 monthly membership represents good value.  For example, the tops and sports bras shown below are priced at $54.95, $49.95, $64.95 and $54.95 respectively.  A customer would therefore reasonably expect that if she paid $59.99 she would unlock $100.00 in value, a favorable value proposition.  However, upon becoming a VIP Member, the price on these items drastically drops to $10.98, $9.98, $12.98, and $10.98 respectively.  Effectively, the customer is induced to paying $59.99 for an item valued at significantly less because of a false and manipulative reference price.

1

2

3

4

5

6

7

8

   

Sleek Seamless Scoop Neck Short-Sleeve Top
LIMITED TIME OFFER: 80% OFF
$10.98 $54.95

Sleek Seamless Low Impact Bra
LIMITED TIME OFFER: 80% OFF
$9.98 $49.95

Oasis Twist Medium Impact Sports Bra
LIMITED TIME OFFER: 80% OFF
$12.98 $64.95

HeatherFlex Longline Low Impact Bra
LIMITED TIME OFFER: 80% OFF
$10.98 $54.95

27.    Additionally, under the Program's terms and conditions, if not used within twelve months, the full value of the member's Promotional Member Credits – the $59.95 monthly membership fee *and* the $40.05 extra value – is wiped out. The member receives neither a refund of her $59.95 monthly membership fee nor a credit for any remaining extra value.

28.    Defendant offers new specials monthly on its website and stores each month and frequently changes its inventory. A Program member whose Promotional Member Credits are expiring in a given month is required to spend those credits on whatever products Defendant currently has on offer that month, and if the Member does not want an item that month, or does not like the styles then on offer, the entire value – the $50.94 monthly membership fee plus the $40.04 value of the Promotional Member Credit – is lost to the consumer.

29.     Further, under the Program's terms and conditions, Defendant refuses to redeem Promotion Member Credits for cash, regardless of the amount.

### CALIFORNIA'S AUTOMATIC RENEWAL LAW
### Cal. Bus. Prof. Code § 17600, et. seq.

30.     In the 2009 Legislative Session, the California Legislature passed the Automatic Purchase Renewal Statute ("Automatic Renewal Law" or "ARL"), which was intended "to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. Prof. Code § 17600.

31.     The ARL addresses "increasingly common" consumer complaints of unwanted credit charges for products or services consumers did not explicitly request or know they were agreeing to, "often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to." California Bill Analysis, S.B. 340 Sen., 4/21/2009.

32.     Under the ARL, an "automatic renewal means a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. Prof. Code § 17601(a).

33.     The ARL requires that the following disclosures pertaining to an automatic renewal be "clear and conspicuous:"

1)     That the subscription or purchasing agreement will continue until the consumer cancels;

2)     The description of the cancellation policy that applies to the offer;

3)     The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

4)     The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer;

5)     The minimum purchase obligation, if any.

Cal. Bus. Prof. Code § 17601(b).

34.     "Clear and conspicuous" or "clearly conspicuous" means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language.  In the case of a verbal disclosure, "clear and conspicuous" and "clearly and conspicuously" means in a volume and cadence sufficient to be readily audible and understandable. Cal. Bus. & Prof. Code § 17601(c).

35.     The ARL makes it unlawful for a business to (1) make an automatic renewal offer that fails to present the "automatic renewal offer terms" in a "clear and conspicuous manner" "before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity . . . to the request for consent to the offer"; and (2) to charge the

consumer's Payment Method without first obtaining the consumer's "affirmative consent" to the automatic renewal.  Cal. Bus. Prof. Code § 17602(a)(1) & (2).

### DEFENDANT HAS VIOLATED THE ARL

36.    Defendant promotes and sells enrollments into the Program through different channels including online (including its website and mobile apps) and in stores.   Regardless of the means Defendant has used to induce consumers to purchase a Program membership, Defendant has uniformly failed to disclose key, statutorily required automatic renewal terms, in a clear and conspicuous manner *prior to* the customer's completion of the order process – namely: (a) the fact that the VIP Membership Program automatically renews on a month-to-month basis, (b) the means for canceling a VIP Membership, and (c) that the customer's stored payment method will be charged every month, each of which is an independent violation of the ARL, Cal. Bus. & Prof. Code §17602(a)(1).

37.    It is unlawful under the ARL for Defendant to charge customers' Payment Method an Automatic Renewal Fee without first obtaining consumers' affirmative consent to the agreement containing the automatic renewal offer terms. Cal. Bus. & Prof. Code § 17602(a)(2).   To the extent the checkout process on Defendant's websites, in stores, and by other sales channels included the necessary automatic renewal terms, these disclosures were not "clear and conspicuous" as required under the ARL and, as such, did not manifest a customer's consent to the

automatic renewal terms.  As it relates to Defendant's websites and apps, "clear and conspicuous" means the disclosure of key terms is presented in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language.  And, in the case of verbal offers communicated at Defendant's stores, a verbal disclosure that is "clear and conspicuous" and "clearly and conspicuously" means in a volume and cadence sufficient to be readily audible and understandable.  Cal. Bus. & Prof. Code § 17601(c).

38.    Defendant's websites, apps, and other non-auditory sales channels do not display the required automatic renewal disclosures in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language.  Nor are any disclosures provided by Defendant in its stores prior to its sales of VIP Program memberships made in a volume and cadence sufficient to be readily audible and understandable.  Cal. Bus. & Prof. Code § 17601(c).

39.    Rather, to capture more revenue per transaction, Defendant designed its order processes to present the terms of the VIP Membership Program in an intentionally *inconspicuous* manner, including by hiding the fact that the VIP

Membership Program is automatically renewed month-to-month, that a customer's stored Payment Method will be automatically charged, and that the customer can cancel at any time. Indeed, on its website, Defendant has displayed such language in a font type that is smaller than and not otherwise in contrast to surrounding text, and not otherwise in a manner that clearly calls attention to such language. Likewise, with respect to its sales of its VIP Membership in stores Defendant hid the fact that the VIP Membership is automatically renewed each month, that a customer's stored Payment Method will be automatically charged monthly, and that the customer can cancel at any time –by either conveying those disclosures in a volume and cadence insufficient to render those disclosures audible, or by not making them at all.

## THE CALIFORNIA GIFT CERTIFICATE STATUTE
### Cal. Civ. Code § 1749.45 *et. seq*.

40.    In 2007, recognizing that gift certificate issuers receive billions of dollars annually at their customers' expense because of unfair and one-sided terms governing gift certificate programs, the California Legislature passed legislation regulating a retailer's handling of gift certificates.  *See* California Bill Analysis, S.B. 250, Sen., 3/27/2007.

41.    The Gift Certificate Statute, codified at Cal. Civ. Code § 1495.45 *et. seq.* addresses the main ways by which retailers obtain windfalls at customers' expense, including through the expiry of gift certificates that are not redeemed

1    within the issuer's set timeframe.  Thus, under Cal. Civ. Code § 1495.5(a)(1) "it is

2    unlawful for any person or entity to sell a gift certificate to a purchaser that contains

3    …an expiration date."

### DEFENDANT'S PROGRAM POLICIES VIOLATE THE CALIFORNIA GIFT CERTIFICATE STATUTE

6    42.    Customers enrolled in Defendant's VIP Membership Program receive

7    $40.05 in additional purchasing value in exchange for their automatic payment of

8    the $59.95 monthly membership fee, which, collectively, Defendant terms a

9    Promotional Membership Credit.

10    43.    This so-called Promotional Membership Credit is, in reality, a gift

11    certificate worth $100.00, as it is, inter alia, "value held in trust" by the Defendant

12    (e.g., purchased by the member on a prepaid basis) for later use by Defendant's

13    customers to purchase products only from Defendant and Defendant-affiliated

14    entities.  *See* Cal. Civ. Code § 1495.6(a).

15    44.    Defendant issued the gift certificates in exchange for cash and is thus

16    a "seller" of gift certificates subject to the requirements of the California Gift

17    Certificate Statute.

18    45.    Defendant has violated the California Gift Certificate Statute.   In

19    violation of Cal. Civ. Code § 1495.5(a)(1), under the VIP Membership Program's

20    terms and conditions, Promotional Membership Credits have an expiration date of

12 months after the date of issuance and Defendant does, in fact, void unused Promotional Member Credits.

### PLAINITIFFS' VIP MEMBERSHIP

**Plaintiff Dennis Bateman**

46.     Plaintiff Bateman joined the VIP Membership Program in or about March 2023 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that he would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for his payment of $59.95.

47.     Plaintiff Bateman did not realize until after he joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.  In fact, most items were priced *below* the $59.95 purchase price.

48.     As a part of his enrollment in the Program, Defendant stored Plaintiff Bateman's credit card and billing address.

49.     Defendant failed to notify Plaintiff Bateman in a clear and conspicuous manner that it would store his credit card and billing information, that it would automatically renew his membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Bateman's credit card on a monthly basis.

50.    Defendant subsequently charged Plaintiff Bateman's credit card a monthly renewal fee without his consent.

51.    The facts giving rise to Plaintiff Bateman's claims are materially the same as the Class he seeks to represent.

**Plaintiff Christian Bures**

52.    Plaintiff Bures joined the VIP Membership Program in December 2023 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that he would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for his payment of $59.95.

53.    Plaintiff Bures did not realize until after he joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.  In fact, most items were priced *below* the $59.95 monthly membership fee.

54.    As a part of his enrollment in the VIP Membership Program, Defendant stored Plaintiff Bures's credit card and billing address.

55.    Defendant failed to notify Plaintiff Bures in a clear and conspicuous manner that it would store his credit card and billing information, that it would automatically renew his membership in the VIP Membership Program on a monthly

basis, or that it would automatically charge Plaintiff Bures's credit card on a monthly basis.

56.    Defendant subsequently charged Plaintiff Bures's credit card a monthly renewal fee without his consent.

57.    The facts giving rise to Plaintiff Bures's claims are materially the same as the Class he seeks to represent.

**Plaintiff Megan Carter**

58.    Plaintiff Carter joined the VIP Membership Program in or about August 2020 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that she would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for her payment of $59.95.

59.    Plaintiff Carter did not realize until after she joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.    In fact, most items were priced *below* the $59.95 monthly membership fee.

60.    As a part of her enrollment in the Program, Defendant stored Plaintiff Carter's credit card and billing address.

61.    Defendant failed to notify Plaintiff Carter in a clear and conspicuous manner that it would store her credit card and billing information, that it would automatically renew her membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Carter's credit card on a monthly basis.

62.    Defendant subsequently charged Plaintiff Carter's credit card a monthly renewal fee without her consent.

63.    The facts giving rise to Plaintiff Carter's claims are materially the same as the Class she seeks to represent.

**Plaintiff John Forgas**

64.    Plaintiff Forgas joined the VIP Membership Program in or about August 2020 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that he would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for his payment of $59.95.

65.    Plaintiff Forgas did not realize until after he joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.    In fact, most items were priced *below* the $59.95 monthly membership fee.

66.    As a part of his enrollment in the VIP Membership Program, Defendant stored Plaintiff Forgas's credit card and billing address.

67.    Defendant failed to notify Plaintiff Forgas in a clear and conspicuous manner that it would store his credit card and billing information, that it would automatically renew his membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Forgas's credit card on a monthly basis.

68.    Defendant subsequently charged Plaintiff Forgas's credit card a monthly renewal fee without his consent.

69.    The facts giving rise to Plaintiff Forgas's claims are materially the same as the Class he seeks to represent.

**Plaintiff Lance Goble**

70.    Plaintiff Goble joined the VIP Membership Program in April 2021 via Defendant's Fabletics.com website.  Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that he would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for his payment of $59.95.

71.    Plaintiff Goble did not realize until after he joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being

valued at $100. In fact, most items were priced *below* the $59.95 monthly membership fee.

72.    As a part of his enrollment in the Program, Defendant stored Plaintiff Goble's credit card and billing address.

73.    Defendant failed to notify Plaintiff Goble in a clear and conspicuous manner that it would store his credit card and billing information, that it would automatically renew his membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Goble's credit card on a monthly basis.

74.    Defendant subsequently charged Plaintiff Goble's credit card a monthly renewal fee without his consent.

75.    Plaintiff Goble had at least one $100 Promotional Membership Credit expire because he did not use the credit within one year.

76.    Plaintiff Goble did not receive a refund of the $100 Promotional Member Credit value or even the $59.95 purchase value of the expired Promotional Member Credit.

77.    The facts giving rise to Plaintiff Goble's claims are materially the same as the Class and Subclass he seeks to represent.

1

**Plaintiff Daniel Golez**

2      78.    Plaintiff Golez joined the VIP Membership Program in January 2023

3   via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership

4   Program represented a good value based on Defendant's representation that he

5   would be receiving the equivalent of $100 of purchasing value through a

6   Promotional Member Credit in exchange for his payment of $59.95.

7      79.    Plaintiff Golez did not realize until after he joined the VIP Membership

8   Program that it was next to impossible to receive close to $100 in value by using

9   Promotional Member Credits because very few items came close to being valued at

10  $100.  In fact, most items were priced *below* the $59.95 monthly membership fee.

11     80.    As a part of his enrollment in the VIP Membership Program,

12  Defendant stored Plaintiff Golez's credit card and billing address.

13     81.    Defendant failed to notify Plaintiff Golez in a clear and conspicuous

14  manner that it would store his credit card and billing information, that it would

15  automatically renew his membership in the VIP Membership Program on a monthly

16  basis, or that it would automatically charge Plaintiff Golez's credit card on a

17  monthly basis.

18     82.    Defendant subsequently charged Plaintiff Golez's credit card a

19  monthly renewal fee without his consent.

20

83.     The facts giving rise to Plaintiff Golez's claims are materially the same as the Class he seeks to represent.

**Plaintiff Gosein-Vasquez**

84.     Plaintiff Gosein-Vasquez joined the VIP Membership Program in or about June 2021 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that she would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for her payment of $59.95.

85.     Plaintiff Gosein-Vasquez did not realize until after she joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.   In fact, most items were priced *below* the $59.95 monthly membership fee.

86.     As a part of her enrollment in the VIP Membership Program, Defendant stored Plaintiff Gosein-Vasquez's credit card and billing address.

87.     Defendant failed to notify Plaintiff Gosein-Vasquez in a clear and conspicuous manner that it would store her credit card and billing information, that it would automatically renew her membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Gosein-Vasquez's credit card on a monthly basis.

88.   Defendant subsequently charged Plaintiff Gosein-Vasquez's credit card a monthly renewal fee without her consent.

89.   The facts giving rise to Plaintiff Gosein-Vasquez's claims are materially the same as the Class she seeks to represent.

**Plaintiff Thomas Hamilton**

90.   Plaintiff Hamilton joined the VIP Membership Program in January 2023 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that he would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for his payment of $59.95.

91.   Plaintiff Hamilton did not realize until after he joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.   In fact, most items were priced *below* the $59.95 monthly membership fee.

92.   As a part of his enrollment in the VIP Membership Program, Defendant stored Plaintiff Hamilton's credit card and billing address.

93.   Defendant failed to notify Plaintiff Hamilton in a clear and conspicuous manner that it would store his credit card and billing information, that it would automatically renew his membership in the VIP Membership Program on

a monthly basis, or that it would automatically charge Plaintiff Hamilton's credit card on a monthly basis.

94.    Defendant subsequently charged Plaintiff Hamilton's credit card a monthly renewal fee without his consent.

95.    The facts giving rise to Plaintiff Hamilton's claims are materially the same as the Class he seeks to represent.

**Plaintiff Kelli Langton**

96.    Plaintiff Langton joined the VIP Membership Program in or about August 2020 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that she would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for her payment of $59.95.

97.    Plaintiff Langton did not realize until after she joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100.   In fact, most items were priced *below* the $59.95 monthly membership fee.

98.    As a part of her enrollment in the VIP Membership Program, Defendant stored Plaintiff Langton's PayPal account information and billing address.

99.    Defendant failed to notify Plaintiff Langton in a clear and conspicuous manner that it would store her PayPal account and billing information, that it would automatically renew her membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Langton's PayPal account on a monthly basis.

100.   Defendant subsequently charged Plaintiff Langton's PayPal account a monthly renewal fee without her consent.

101.   The facts giving rise to Plaintiff Langton's claims are materially the same as the Class she seeks to represent.

**Plaintiff Jessica Sias**

102.   Plaintiff Sias joined the VIP Membership Program in or about August 2020 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that she would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for her payment of $59.95.

103.   Plaintiff Sias did not realize until after she joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being valued at $100. In fact, most items were priced *below* the $59.95 monthly membership fee.

104.   As a part of her enrollment in the VIP Membership Program, Defendant stored Plaintiff Sais's credit card and billing address.

105.   Defendant failed to notify Plaintiff Sias in a clear and conspicuous manner that it would store her credit card and billing information, that it would automatically renew her membership in the VIP Membership Program on a monthly basis, or that it would automatically charge Plaintiff Sias's credit card on a monthly basis.

106.   Defendant subsequently charged Plaintiff Sias's credit card a monthly renewal fee without her consent.

107.   The facts giving rise to Plaintiff Sias's claims are materially the same as the Class she seeks to represent.

**Plaintiff Max Reinisch**

108.   Plaintiff Reinisch joined the VIP Membership Program in September 2023 via Defendant's Fabletics.com website. Plaintiff believed that the VIP Membership Program represented a good value based on Defendant's representation that he would be receiving the equivalent of $100 of purchasing value through a Promotional Member Credit in exchange for his payment of $59.95.

109.   Plaintiff Reinisch did not realize until after he joined the VIP Membership Program that it was next to impossible to receive close to $100 in value by using Promotional Member Credits because very few items came close to being

1  valued at $100.   In fact, most items were priced *below* the $59.95 monthly

2  membership fee.

3      110.   As a part of his enrollment in the VIP Membership Program,

4  Defendant stored Plaintiff Reinisch's credit card and billing address.

5      111.   Defendant failed to notify Plaintiff Reinisch in a clear and conspicuous

6  manner that it would store his credit card and billing information, that it would

7  automatically renew his membership in the VIP Membership Program on a monthly

8  basis, or that it would automatically charge Plaintiff Reinisch's credit card on a

9  monthly basis.

10     112.   Defendant subsequently charged Plaintiff Reinisch's credit card a

11  monthly renewal fee without his consent.

12     113.   The facts giving rise to Plaintiff Reinisch's claims are materially the

13  same as the Class he seeks to represent.

14                    **Class Action Allegations**

15     114.   Plaintiffs bring this action on behalf of themselves and all persons

16  similarly situated pursuant to Fed. R. Civ. P. 23.   Plaintiffs collectively seek to

17  represent a Nationwide Class defined as:

18         All persons nationwide who, within the applicable statutory period, up
           to and including the date of the final judgment in this action, purchased
19         a VIP Membership Program membership.

20

115.   Pursuant to Fed. R. Civ. P. 23, Plaintiff Goble seeks to represent an Expired Value Subclass defined as:

> All persons who, within the applicable statutory period, up to and including the date of the final judgment in this action, purchased a VIP Membership Program membership and whose Promotional Membership Credits expired during the applicable statutory period.

116.   Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton seek to represent a Florida Subclass, defined as:

> All persons in Florida who, within the applicable statutory period, up to and including the date of final judgment in this action, purchased a VIP Membership Program membership.

117.   The Nationwide Class, Expired Value Subclass, and Florida Subclass are hereinafter referred to collectively as "the Classes."  Excluded from the Classes are Defendant, its corporate parents, subsidiaries, franchisees and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded person or entities, and the Court to which this action is assigned.

118.   Plaintiffs reserve the right to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

119.   This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies

the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

120.   On application by Plaintiffs' counsel for class certification, Plaintiffs may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

121.   ***Numerosity.***  The number of persons within the Classes is substantial, believed to amount to be in at least the thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

122.   **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a)    Whether Defendant's marketing of the Promotional Member Credit as having $100 in purchasing value violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and/or California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

(b)    Whether Defendant's monthly renewal of the VIP Membership Program membership constitutes an "automatic renewal" within the meaning of Cal. Bus. & Prof. Code § 17601(a);

(c)    Whether Defendant failed to present the automatic renewal offer terms or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l);

(d)    Whether Defendant charged Plaintiffs' and members of the Classes' stored Payment Method an Automatic Renewal Fee without first obtaining their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code §17602(a)(2);

(e)    Whether the goods and services provided by Defendant are deemed "unconditional gifts" in accordance with Cal. Bus. & Prof. Code § 17603;

(f)    Whether Defendant's conduct alleged herein as to the automatic renewal of the VIP Membership Program violated California's UCL, Bus. & Prof. Code §§ 17200, *et seq.*;

(g)    Whether Defendant's conduct alleged herein as to the automatic renewal of the VIP Membership Program violated California's FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

(h)    Whether Defendant's Promotional Member Credit is a "Gift Certificate" as set forth in Cal. Civ. Code § 1749.45(a);

(i)    Whether Defendant's voiding of unused Promotional Member Credits one year after issuance violated the Gift Certificate Statute, Cal. Civ. Code § 1749.5(a)(1)

(j)    Whether Defendant's violations of the Gift Certificate Statute, Cal. Civ. Code § 1749.45(a) *et. seq*. constitute violations of California's UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

(k)    Whether Defendant's automatic renewal of the Program violates the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 to 201.213 ("FDUPTA") by charging customers' payment methods for an automatic renewal or continuous service without obtaining affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms;

(l)    Whether Defendant's automatic renewal of the Program violates the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 to 201.213 ("FDUPTA") for failure to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled, and in visual or temporal proximity to the request for consent to the offer;

(m)    Whether Plaintiffs and the Classes are entitled to, and the amount of any, damages and/or restitution;

(n)    Whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and

(o)    Whether Plaintiffs and the Classes are entitled to attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5

123.    ***Typicality.*** The claims of the named Plaintiffs are typical of the claims of members of the Class because Plaintiffs and all members of the proposed Class have suffered similar injuries as a result of the same practices alleged herein.

Plaintiffs have no interests to advance adverse to the interests of the other members of the proposed Class.

124. **Adequacy**. Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs fairly and adequately represent and protect the interests of the Class. Neither Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

125. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify

1    the delay and expense to all parties and to the court system resulting from multiple

2    trials of the same factual issues.  By contrast, the maintenance of this action as a

3    class action, with respect to some or all of the issues presented herein, presents few

4    management difficulties, conserves the resources of the parties and of the court

5    system and protects the rights of each member of the Class.  Plaintiffs anticipate no

6    difficulty in the management of this action as a class action.  Class-wide relief is

7    essential to compel compliance with the ARL.

8        126.    Defendant has acted or failed to act on grounds generally applicable to

9    the Class, thereby making appropriate final injunctive relief with respect to the

10   Class as a whole.

11       127.    Without a class action, Defendant will continue a course of action that

12   will result in further damages to Plaintiffs and members of the Class and will likely

13   retain the benefits of its wrongdoing.

14       128.    Based on the foregoing allegations, Plaintiffs' claim for relief is as set

15   forth below.

16                          **CAUSES OF ACTION**

17                        **FIRST CLAIM FOR RELIEF**
     **Violation of California's Unfair Competition Law**
18     **(by Plaintiffs on behalf of the Nationwide Class)**
              **(Bus. & Prof. Code §§ 17200 *et. seq.*)**
19       129.    Plaintiffs incorporate every allegation set forth in paragraphs 1-127 of

20   this Class Action Complaint as if fully set forth herein.

---

34
CLASS ACTION COMPLAINT

130.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

131.   The California Unfair Competition Act ("UCL") (Bus. & Prof. Code §§ 17200 et seq.) prohibits acts of unfair competition, which include any "unlawful, unfair or fraudulent business act or practice."

132.   By its actions described above, Defendant has violated and continues to violate the UCL in that it has engaged and continues to engage in unlawful and unfair business practices within the meaning of the UCL.

133.   Section 17200 prohibits any "unfair . . . business act or practice." Defendant's business practices with respect to its VIP Membership Program are unfair in at least three ways.   First, as described in the preceding paragraphs, Defendant engaged in the unfair business practice of selling and issuing Promotional Member Credits with expiration dates.  This practice is unfair insofar as it forces consumers to redeem the gift certificates in an unreasonably short amount of time or risk the Promotional Membership Credits expiring, thus limiting customer choice to items and styles then on offer.

134.   Second, Defendant engaged in the unfair and deceptive business practice of automatically billing Plaintiffs' and the proposed Nationwide Class Members' credit cards and other stored payment methods every month without providing clear and conspicuous notice of the fact that the customers' payment

method would be stored, that customers would be automatically billed on a monthly basis, without customers' consent to automatically charge their credit cards and other stored payments, or informing customers how to cancel the automatic charges. This practice is unfair and deceptive insofar as it imposes charges on consumers without notice and deprives customers of choice and money.

135.   Third, Defendant engaged in unfair and deceptive business acts and practices by presenting the Promotional Member Credit component of its VIP Membership Program as a good value whereby a consumer could gain $100 of purchasing value by paying $59.95 when in fact it was practically impossible for a customer to use a Promotional Member Credit to purchase an outfit set for close to $100.   This practice is unfair and deceptive because it misrepresents the value a consumer can reasonably expect to obtain through their purchase of Defendant's VIP Membership.

136.   In fact, most of Defendant's products fall below the $59.95 price consumers paid for the Promotional Member Credit, and virtually none of those products came close to costing $100.   In essence, consumers were paying $59.95 to purchase Promotional Member Credits, which did not unlock any meaningful additional value, and would have been better off not enrolling in the VIP Membership Program because most of Defendant's stock is priced at less than the $59.95 monthly membership fee.   Defendant further deceives customers by

promoting a deceptive reference price for most if not all of the items on offer. These inflated prices serve to induce customers to purchase a VIP Membership but do not reflect the real value to be obtained.

137. Defendant's business practices, as detailed above, are unethical, oppressive, and unscrupulous. Further, the adverse effects of such conduct outweigh any justifications for Defendant's wrongful conduct.

138. Defendant sold most of its Program memberships on fabletics.com and other e-commerce portals. Defendant made its offer for sale of Program memberships on fabletics.com and e-commerce portals operated from California. Defendant completed the sale of its Program memberships in California on websites and e-commerce portals in California, and pursuant to policies designed and implemented in California. Defendant made representations and disclosures concerning the Program from California, shipped goods purchased under the Program from California, automatically charged Plaintiffs and Nationwide Class members' stored payment methods from, and received payment in, California, and otherwise ran its business operations from California. With respect to sales of the Program made on non-e-commerce channels, e.g., Defendant's physical locations, Defendant made its offer pursuant to pursuant to policies designed in California, shipped goods purchased under the Program from California, and automatically

charged class members' stored payment methods from, and received payment in, California.

139.    The above-described unlawful practices engaged in by Defendant continue to this day and present a threat to the proposed Nationwide Class and the public in that Defendant has failed to rescind the expiration dates of its Promotional Member Credit, continues to automatically charge consumers on a monthly basis without consent, and continues to tout the benefits of the VIP Membership Program without providing Program members meaningful value.

140.    These practices have caused Plaintiffs and the other members of the proposed Nationwide Class to lose money because they can no longer redeem their expired Promotional Member Credits, have been automatically charged on a monthly basis without notice and consent, and/or paid a monthly membership fee for a VIP Membership program which does not provide the represented value.

141.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have complied with the California Gift Certificate Statute and honored Promotional Member Credits on a non-expiring basis, complied with the California Automatic Purchase Renewal Statute by making disclosures as required by law, and accurately represented the value provided by its VIP Membership Program. Because of its deception, Defendant has been able to reap unjust profit.

142.    Defendant will continue to engage in the above-described conduct unless enjoined from its unlawful conduct. Accordingly, injunctive relief is appropriate.

143.    Pursuant to California Business & Professions Code§ 17203, Plaintiffs, individually and on behalf of the proposed Nationwide Class, seek an order of this Court prohibiting Defendant from continuing to engage in the unlawful and/or unfair business acts or practices set forth in this Complaint. Plaintiffs additionally request an order from the Court requiring that Defendant provide (l) complete equitable monetary relief, including return of the full amount of money Defendant obtained as monthly membership fees, or alternatively, all monies which Defendant improperly collected and retained from expired Promotional Member Credits, and (2) equitable relief adjudging that prospective expiration dates are invalid.

### SECOND CLAIM FOR RELIEF
**Violations of California's False Advertising Law ("FAL")**
**(by Plaintiffs on behalf of the Nationwide Class)**
**(Cal. Bus. & Prof. Code §§ 17500, *et. seq.*)**

144.    Plaintiffs re-allege and incorporate by reference every allegation set forth in paragraphs 1-127 of this Class Action Complaint as though alleged in this claim.

145.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

146.   California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

147.   Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements from California to consumers nationwide and the general public concerning the VIP Membership Program, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading, as alleged above.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions from California to consumers nationwide and to the public as part of a plan or scheme with intent not to sell those services as advertised, as alleged above.

148.   As set forth above, Defendant's statements include but are not limited to representations and omissions made to consumers before purchasing the VIP

1  Membership Program regarding the automatic renewal of the VIP Membership

2  Program and the expected value of a Promotional Member Credit.

3        149.   With respect to the VIP Membership Program's automatic renewal,

4  Defendant violated Cal. Bus. & Prof. Code § 17500 by, *inter alia*:

5        A.     Omitting the fact that the VIP Membership Program membership
              would be automatically renewed;
6        B.     Omitting the fact that Defendant's stored customers' Payment
              Methods and said Payment Methods would be automatically charged;
7              and
        C.     Omitting the means and method by which customers may cancel
8              their VIP Membership subscription.

9        150.   With  respect  to  Defendant's  representations  concerning  the  VIP

10 Membership Program's Promotional Member Credit, Defendant violated Cal. Bus.

11 & Prof. Code § 17500 by representing that a Promotional Member Credit could be

12 redeemed for any two-piece outfit or item up to $100.  However, virtually none of

13 the items or outfits Defendant offered were priced at close to $100.  Most of

14 Defendant's merchandise did not even exceed the $59.95 cost of the monthly

15 membership fee.

16       151.   Further, Defendants routinely use deceptive reference pricing with

17 respect to most, if not all, of its products on offer.  Defendant prices each product

18 with a reference price which is closer or, occasionally, exceeds $59.99 only to

19 drastically drop those prices once an individual has purchased a VIP Program

20 Membership.

152.   Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

153.   Plaintiffs and the members of the proposed Nationwide Class were deceived by Defendant's statements and omissions made online on Defendant's websites, which were operated from California when they signed up and paid for Defendant's VIP Membership Program.  Likewise, Defendant omitted the above information as to those customers who signed up for the VIP Membership at its physical locations.

154.   There is a strong probability that other consumers nationwide and members of the public were also, or are likely to be, deceived as well. Defendant's false and misleading statements and material omissions would mislead any reasonable consumer. Consumers relied on Defendant's statements and omissions concerning the VIP Membership Program's automatic renewal and Promotional Member Credits to their detriment.

155.   Plaintiffs and the proposed Nationwide Class lost money as a result of Defendant's violations of Cal. Bus. & Prof. Code § 17500 because they would not have paid for the VIP Membership Program on the same terms if the true facts were known about the product as the VIP Membership Program does not have the characteristics represented by Defendant.

1    156.   Plaintiffs, individually and on behalf of all similarly situated members

2    of the Nationwide Class, seek individual, representative, and public injunctive relief

3    and any other necessary orders or judgments that will prevent Defendant from

4    continuing with its false and deceptive advertisements and omissions; restitution

5    that will restore the full amount of their money or property; disgorgement of

6    Defendant's relevant profits and proceeds; and an award of costs and reasonable

7    attorneys' fees.

8    **THIRD CLAIM FOR RELIEF**
     **Violation of California's Gift Card Statute**

9    **(by Plaintiff Goble on behalf of the Expired Value Subclass)**
     **(Cal. Civ. Code § 1749.45 *et. seq.*)**

10    157.   Plaintiff Goble re-alleges and incorporates by reference every

11    allegation set forth in paragraphs 1-7, 12, 19-30, 41-46, 71-78, 116, and 118-129 of

12    this Class Action Complaint as if fully set forth herein.

13    158.   Plaintiff Goble brings this claim on his own behalf and on behalf of

14    each member of the Expired Value Subclasses.

15    159.   Defendant's sale and issuance of Promotional Member Credits as a

16    component of the VIP Membership Program violates California's Gift Certificate

17    Statute, Cal. Civ. Code § 1749.45 *et. seq.*, which prohibits the sale of a gift

18    certificate that is subject to an expiration date.

19    160.   Defendant sold most of its Program memberships on fabletics.com and

20    other e-commerce portals. Defendant made its offer for sale of Program

---

43
CLASS ACTION COMPLAINT

memberships on fabletics.com and e-commerce portals operated from California. Defendant completed the sale of its Program memberships in California on websites and e-commerce portals in California, and pursuant to policies designed and implemented in California. Defendant made representations and disclosures concerning the Program from California, shipped goods purchased under the Program from California, automatically charged Plaintiffs and Nationwide Class members' stored payment methods from, and received payment in, California, and otherwise ran its business operations from California. With respect to sales of the Program made on non-e-commerce channels, e.g., Defendant's physical locations, Defendant made its offer pursuant to pursuant to policies designed in California, shipped goods purchased under the Program from California, and automatically charged class members' stored payment methods from, and received payment in, California. As such, each Promotional Member Credit was sold from California.

161.    Defendant sold Promotional Member Credits to consumers, including Plaintiff Goble and members of the Expire Value Subclass. Each Promotional Member Credit costs $59.95 and entitles the holder to $100.00 in purchase value on Defendant's website and stores.

162.    This Promotional Membership Credit it is in reality a gift certificate worth $100.00, as it is, *inter alia*, "value held in trust" by the Defendant (*e.g.* purchased by the member on a prepaid basis) for later use by Defendant's customers

to purchase products only from Defendant and Defendant-affiliated entities. *See* Cal. Civ. Code § 1495.6(a).

163.   Defendant issued the gift certificates in exchange for cash and is thus a "seller" of gift certificates subject to the requirements of the California Gift Certificate Statute.

164.   Cal. Civ. Code § 1495(a)(1) prohibits the sale of gift certificates subject to an expiration date.   However, under the terms and conditions of Defendant's VIP Membership Program, Promotional Member Credits which are not used within twelve months from the date they were issued expire.   Defendant violated the California Gift Certificate Statute by voiding unused Promotional Member Credits twelve months after they were issued.

165.   Plaintiff Goble and members of the Expired Value Subclass were forced to forfeit to Defendant the value of their unused Promotional Member Credits without any refund or products to show for them.   Plaintiff Goble and the members of the Expired Value Subclass did not receive the promotional value of $100 *and* lost the purchase value of $59.95

166.   As a result of Defendant's unlawful imposition of an expiration date on Promotional Member Credits Plaintiff Goble and members of the Expired Value Subclass were injured by paying a fee for value they forfeited solely based on the Program terms and conditions.

167. As a direct and proximate result of Defendant's voiding of Promotional Member Credits after one year in violation of Cal. Civ. Code. § 1749.5 Plaintiff Goble and members of the Expired Value Subclass have suffered and will continue to suffer damages.

168. Plaintiff Goble and the members of the Expired Value Subclass are entitled to injunctive relief, restitution, and refund of the value of their expired and voided Promotional Member Credits.

169. Additionally, Plaintiff Goble and the members of the Expired Value Subclass seek attorneys' fees and costs

**FOURTH CLAIM FOR RELIEF**
**Violation of the Florida Deceptive and**
**Unfair Trade Practices Act**
**(by Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and**
**Langton on behalf of the Florida Class)**
**(Fla. Stat. §§ 501.201 *et. seq.*)**

170. Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton re-allege and incorporate by reference every allegation set forth in paragraphs 1-11, 114-16, 20-46, 53-70, 85-102, and 117-129 of this Class Action Complaint as though alleged in this claim.

171. Plaintiff Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton bring this claim individually and on behalf of the members of the proposed Florida Subclass against Defendant. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et. seq.

("FDUPTA"). The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

172. Section 501.204(1) of FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

173. Defendant's sale of VIP Membership constitutes the conduct of "trade or commerce" within the meaning of FDUTPA, Fla. Stat. § 501.203(8).

174. Plaintiff Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton and each member of the Florida Subclass are "consumers" within the meaning of FDUPTA, Fla. Stat. § 501.203(7)

175. Defendant's deceptive practices of failing to notify Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton and members of the proposed Florida Subclass in a clear and conspicuous manner that upon enrollment in the VIP Membership Program, Defendant would: (a) store a consumer's credit card or other third-party payment and billing information, that it would automatically renew the customer's membership in the Program on a monthly basis, that it would (b) automatically charge a customer's stored payment method on a monthly basis without the customer's consent; and (c) clearly communicating the

means and methods of cancellation are likely to mislead an objectively reasonable consumer– and have misled – consumers such as Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton and members of the proposed Florida Subclass.

176.   These practices are also unfair insofar as they offend established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

177.   Defendant's unfair and deceptive practices harmed Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton and members of the proposed Florida Subclass by charging these customers a monthly fee for the VIP Membership Program without their consent.

178.   Plaintiff Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton and members of the proposed Florida Subclass were damaged by their credit card and stored payment methods being charged by Defendant on a monthly basis without Plaintiff Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton or members of the proposed Florida Subclass's consent.

179.   Defendant engaged in unfair and deceptive business acts and practices by presenting the Promotional Member Credit component of its VIP Membership Program as a good value whereby a consumer could gain $100 of purchasing value

by paying $59.95 when, in fact, it was practically impossible for a customer to use a Promotional Member Credit to purchase an outfit set for close to a $100.

180.    In fact, most of Defendant's products fell below the $59.95 price consumers paid for the Promotional Member Credit, and virtually none of those products came close to costing $100.  In essence, consumers were paying $59.95 to purchase Promotional Member Credits, which did not unlock any meaningful additional value, and would have been better off not enrolling in the VIP Membership Program because most of Defendant's stock is valued at less than the $59.95 cost.  Defendant further deceives customers by promoting a deceptive reference price for most if not all of the items on offer.  These inflated prices serve to induce customers to purchase a VIP Membership but do not reflect the real value to be obtained.

181.    Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton and members of the proposed Florida Subclass were damaged by Defendant's unfair and deceptive practices of creating the impression that the VIP Membership Program represented a good value for customers because they were induced to pay for Promotional Member Credits which did not have additional value.

182.    Plaintiffs Bures, Carter, Forgas, Gosein-Vasquez, Hamilton, and Langton, individually and on behalf of all similarly situated Florida consumers,

1    seek individual, representative, and public injunctive relief and any other necessary

2    orders or judgments that will prevent Defendant from continuing with its deceptive

3    and unfair trade practices; damages; and an award of costs and reasonable attorneys'

4    fees as provided for under Fla. Stat. § 501.211 et. seq.

5                            **<u>PRAYER FOR RELIEF</u>**

6        WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

7        A.    For an order certifying Plaintiffs as Class representatives and

8    appointing Plaintiffs' counsel as class counsel;

9        B.    For an order finding in favor of Plaintiffs and the Class on all claims

10    alleged herein;

11        C.    For actual, compensatory, statutory, and/or punitive damages in

12    amounts to be determined by the Court and/or jury;

13        D.    For prejudgment interest on all amounts awarded;

14        E.    For an order of restitution and all other forms of equitable monetary

15    relief;

16        F.    For injunctive relief as pleaded or as the Court may deem proper; and

17        G.    For an order awarding Plaintiffs and the Class their reasonable

18    attorneys' fees expenses, and costs of suit; and

19        H.    Awarding such other equitable or other relief as the Court may deem

20    just and proper.

---

CLASS ACTION COMPLAINT

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated: March 12, 2025                    Respectfully Submitted,


**HEDIN LLP**

By:   */s/ Frank S. Hedin*

Frank S. Hedin (SBN 291289)
fhedin@hedinllp.com
**HEDIN LLP**
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone: (305) 357-2107
Facsimile:  (305) 200-8801

*Counsel for Plaintiffs and the Putative Class*