1  SETH E. PIERCE (SBN 186576)
      sep@msk.com
2  BRADLEY J. MULLINS (SBN 274219)
      bjm@msk.com
3  REBECCA BENYAMIN (SBN 334130)
      rebecca.benyamin@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
5  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
6  Facsimile: (310) 312-3100

7  Attorneys for Defendant
   Fabletics, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                       EASTERN DIVISION

12  | DENNIS BATEMAN, CHRISTIAN | CASE NO. 2:25-cv-02200 SVW (AJRx) |

13  DENNIS BATEMAN, CHRISTIAN
    BURES, MEGAN CARTER, JOHN
    FORGAS, LANCE GOBLE, DANIEL        The Honorable Stephen V. Wilson
    GOLEZ, ELIZABETH GOSEIN-
14  VASQUEZ, THOMAS HAMILTON,          **DEFENDANT FABLETICS, INC.'S**
    KELLI LANGTON, JESSICA SIAS,       **NOTICE OF MOTION AND**
15  and MAX REINISCH, individually and **MOTION TO COMPEL**
    on behalf of all others similarly  **ARBITRATION**
16  situated;,
                                       *[Declarations of Matt Fojut and*
17          Plaintiffs,                *Bradley J. Mullins, and [Proposed]*
                                       *Order Filed Concurrently Herewith]*
18          v.
                                       Time:        June 23, 2025
19  FABLETICS, INC.,                   Date:        1:30 p.m.
                                       Location:    Courtroom 10A
20          Defendant.

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

20568952

_____
            **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

## <u>NOTICE OF MOTION AND MOTION TO COMPEL</u>

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 23, 2025 at 1:30 p.m., or as soon as the matter may be heard in United States District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012, the Honorable Stephen V. Wilson presiding, Defendant Fabletics, Inc. ("Fabletics") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and, alternatively, the California Arbitration Act, California Code of Civil Procedure § 1280, *et seq.*, or the Florida Arbitration Code, ch. 682, Fla. Stat. (2003), as applicable, for an order compelling the individual arbitration of all of Plaintiffs' claims against Fabletics.  Additionally, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), because all of Plaintiffs' individual claims are subject to arbitration, the Court should dismiss Plaintiffs' class allegations, and stay the remainder of this lawsuit.

This Motion is brought on the grounds that Plaintiffs' claims against Fabletics are subject to a valid and enforceable arbitration agreement agreed to by Plaintiffs in connection with their decision to sign up for a Fabletics VIP account, which agreement requires Plaintiffs to individually arbitrate all of their claims.  *See* 9 U.S.C. §§ 3-4.

Pursuant to C.D. Cal. Local Rule 7-3, this Motion is made following the conference between Fabletics' counsel and Plaintiff's counsel, which took place on May 8, 2025, wherein counsel thoroughly discussed the substance and potential resolution of the Motion by videoconference.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Matt Fojut and Bradley J. Mullins, any other matters of which the Court may take

Mitchell
Silberberg &
Knupp LLP

20568952

1  judicial notice, other pleadings and documents on file in this action, and any oral

2  argument of counsel.

3

4  DATED: May 19, 2025                SETH E. PIERCE
                                      BRADLEY J. MULLINS
5                                     REBECCA BENYAMIN
                                      MITCHELL SILBERBERG & KNUPP LLP
6

7

8                                     By: /s/ Bradley J. Mullins
                                          Bradley J. Mullins
9                                         Attorneys for Defendant
                                          Fabletics, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

20568952

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................10

II.     FACTUAL BACKGROUND ..........................................................................11

    A.    Fabletics ........................................................................................11

    B.    Fabletics' Terms..........................................................................12

    C.    Consumers Must Affirmatively Accept and Agree to Fabletics'
       Terms and Conditions In Order to Become a VIP Member ..............14

    D.    Plaintiffs' Allegations ................................................................15

III.    ARGUMENT ................................................................................................15

    A.    Federal Law Mandates Enforcement of the Arbitration Agreement ..15

    B.    The FAA Compels Enforcement Of The Arbitration Agreement ......17

       1.    Plaintiffs Each Agreed To The Terms......................................18

       2.    The Terms Contain a Delegation Provision That Delegates
          Disputes Over the Arbitrability of Plaintiffs' Claims to the
          Arbitrator. ................................................................................20

       3.    The Delegation Provision Is Not Fraudulent, Was Not
          Obtained Under Duress, and Is Not Unconscionable..............23

    C.    The Two Questions of Arbitrability Have Been Satisfied.................24

IV.     THE COURT SHOULD DISMISS PLAINTIFFS' CLASS
    ALLEGATIONS ........................................................................................26

V.      CONCLUSION ..........................................................................................26

Mitchell
Silberberg &
Knupp LLP

20568952

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahern v. Fiserv, Inc.*,
  2023 WL 8945697 (C.D. Cal. Dec. 8, 2023)......................................................20

*Alkutkar v. Bumble Inc.*,
  2022 WL 4112360 (N.D. Cal. Sept. 8, 2022)......................................................24

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ............................................................................................17

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................15

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023)..............................................................................21

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .............................................................................22

*Cable Connection, Inc. v. DIRECTV, Inc.*,
  44 Cal. 4th 1334 (2008)......................................................................................17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...............................................................17, 18, 25

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) ........................................................................................16, 17

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017).................................................................22

*Correa v. A2 Railla Dev., Inc.*,
  2023 WL 6783987 (C.D. Cal. Apr. 7, 2023)........................................................26

*Dean Whitter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................18

*Diaz v. Nexa Mortg., LLC*,
  2024 WL 4458545 (S.D. Cal. Oct. 7, 2024)........................................................26

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ....................................................................................25

*EFund Capital Partners v. Pless*,
  150 Cal. App. 4th 1311 (2007) ("California has a strong public policy in
  favor of arbitration.") ...............................................................................18

*Ensambles Hyson, S.A. de C.V. v. Sanchez*,
  718 F. Supp. 3d 1258 (S.D. Cal. 2024) ....................................................20

*Falls v. Soulbound Studios, LLC*,
  2021 WL 4295137 (C.D. Cal. July 6, 2021) (Wilson, J.) ...................19, 23

*Galen v. Redfin Corp.*,
  2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ............................................22

*Greenbrook NH, LLC v. Est. of Sayre, ex rel. Raymond*,
  150 So. 3d 878 (Fla. Dist. Ct. App. 2014) ................................................25

*Hagstrom v. Co.Fe.Me. USA Marine Exhaust, LLC*,
  322 So. 3d 145 (Fla. Dist. Ct. App. 2021) ................................................18

*John B. Goodman Ltd. P'ship v. THF Const., Inc.*,
  321 F.3d 1094 (11th Cir. 2003) .................................................................17

*Juarez v. T-Mobile USA Inc.*,
  2024 WL 5424366 (C.D. Cal. Aug. 23, 2024) ..........................................18

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019) ....................................................................................26

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020) ..............................................................19

*Manfredi v. Vivint Solar Developer LLC*,
  2021 WL 8441831 (C.D. Cal. Sept. 24, 2021) ..........................................21

*Massage Envy Franchising, LLC v. Doe*,
  339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ................................................18

Mitchell
Silberberg &
Knupp LLP

20568952

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mejia v. TruthFinder, LLC*,
   2022 WL 5236828 (S.D. Cal. Oct. 5, 2022).......................................................19

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016).........................................................................23

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011).........................................................................21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ......................................................................................18

*Moyer v. Chegg, Inc.*,
   2023 WL 4771181 (N.D. Cal. July 25, 2023)....................................................19

*Paxton v. Macy's W. Stores, Inc.*,
   2018 WL 4297763 (E.D. Cal. Sept. 7, 2018) ...................................................24

*Peter v. Doordash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020)............................................................19

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ......................................................................23

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ..................................................................................16

*Prizler v. Charter Commc'ns, LLC*,
   2019 WL 2269974 (S.D. Cal. May 28, 2019) ..................................................24

*Rendon v. T-Mobile USA, Inc.*,
   747 F. Supp. 3d 1314 (C.D. Cal. 2024), *reconsideration denied*, No. 2024
   WL 5256491 (C.D. Cal. Nov. 4, 2024) ..........................................................21

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................................18

*Reunion W. Dev. Partners, LLLP v. Guimaraes*,
   221 So. 3d 1278 (Fla. Dist. Ct. App. 2017)......................................................20

Mitchell
Silberberg &
Knupp LLP

20568952

7

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

4

*Ruiz v. CarMax Auto Superstores, Inc.*,
   2024 WL 1136332 (C.D. Cal. Jan. 18, 2024)..................................... 16

5

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
   566 F. Supp. 3d 1019 (S.D. Cal. 2021) ............................................ 17

6

7

*Scribner v. Trans Union LLC*,
   738 F. Supp. 3d 1301 (E.D. Cal. 2024) ........................................... 18

8

9

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021) .......................................................... 19

10

11

*Suarez v. Uber Techs., Inc.*,
   2016 WL 2348706 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777
   (11th Cir. 2017) ........................................................................... 24

12

13

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011).............................................. 20

14

15

*Tiri v. Lucky Chances, Inc.*,
   226 Cal. App. 4th 231 (2014) ........................................................ 20

16

17

*Valiente v. StockX, Inc.*,
   645 F. Supp. 3d 1331 (S.D. Fla. 2022)............................................. 18

18

19

*Vega v. Tempoe, LLC*,
   2021 WL 3615913 (C.D. Cal. Apr. 16, 2021) ................................... 24

20

21

*Vigueras v. Red Robin Int'l, Inc.*,
   2019 WL 1425887 (C.D. Cal. Feb. 21, 2019) ................................... 25

22

23

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ..................................................................... 16

24

*Weeks v. Interactive Life Forms, LLC*,
   100 Cal. App. 5th 1077 (2024)....................................................... 18

25

26

*Yun Park v. MSX Americas, Inc.*,
   2019 WL 5285446 (C.D. Cal. Oct. 9, 2019) ..................................... 26

27

28

Mitchell Silberberg & Knupp LLP

20568952

8

# TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

*Zamber v. Am. Airlines, Inc.*,
   2020 WL 1445479 (S.D. Fla. Feb. 11, 2020) ...................................................... 19

### STATUTES

9 U.S.C.
   § 2 ................................................................................................................. 15, 17
   § 4 ...................................................................................................................... 17

Cal. Bus. & Prof. Code
   § 17200 ............................................................................................................... 15
   § 17500 *et seq.* ................................................................................................... 15

Cal. Civ. Code
   § 1749.45 *et seq.* .............................................................................................. 15

Fla. Stat.
   § 501.201 *et seq.* .............................................................................................. 15

Mitchell
Silberberg &
Knupp LLP

20568952

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs, purporting to act on behalf of a class of similarly situated consumers, challenge certain features of Defendant's VIP Membership Program – but they do so only by ignoring the clear disclosures provided to them when they signed up, applicable law, and their voluntary and knowing election to join the VIP Membership Program.  To be clear, Defendant Fabletics, Inc. ("Fabletics") fully disputes the merits of Plaintiffs' claims, regardless of legal theory.  While Fabletics is confident that it will ultimately prevail, the determination of Plaintiffs' claims must be made in arbitration, not in court – the subject of this Motion.

Fabletics, a retailer of active wear, offers a VIP Membership Program to consumers who purchase a product and wish to receive certain exclusive benefits, such as member-exclusive discounts, free shipping on most orders, and a monthly membership credit that can be redeemed for Fabletics products. **There is no obligation to join the VIP Membership Program.**  But all consumers that elect to join the VIP Membership Program and accept its benefits – including Plaintiffs – must affirmatively accept the Fabletics Terms and Conditions (the "Terms") as part of the signup process.

The Fabletics Terms, clearly and conspicuously, inform consumers that the Terms include a mandatory arbitration provision (the "Arbitration Agreement"), which requires individual arbitration of all disputes between Fabletics and the consumer relating to, *inter alia*, the VIP Membership Program.

The Terms also delegate disputes over the validity, enforcement, and scope of the arbitration provision to the arbitrator.  This delegation provision requires that this case be compelled to arbitration for the arbitrator to determine all issues, including whether the Arbitration Agreement is valid and enforceable and whether the Arbitration Agreement encompasses Plaintiffs' claims.

1    Thus, because of the delegation provision, but even without it, Plaintiffs are

2    required to arbitrate this dispute under the Federal Arbitration Act ("FAA") or,

3    alternatively, under the California Arbitration Act ("CAA") or Florida Arbitration

4    Code, as applicable, depending on the state of residence of each Plaintiff.

5    The parties agreed to arbitrate.  And in keeping with the strong public policy

6    favoring arbitration, Plaintiffs' agreement to arbitrate all disputes relating to the

7    VIP Membership Program should be enforced.  Accordingly, Fabletics respectfully

8    requests that the Court enter an order compelling Plaintiffs' claims to individual

9    arbitration.  Additionally, because all of Plaintiffs' individual claims are subject to

10    arbitration, the Court should dismiss Plaintiffs' class allegations, and stay the

11    remainder of this lawsuit.

12    **II.    FACTUAL BACKGROUND**

13        **A.    <u>Fabletics</u>**

14    Fabletics is an active lifestyle brand that primarily sells men's and women's

15    active wear, including sportswear, footwear, and accessories.  Declaration of Matt

16    Fojut ("Fojut Decl.") ¶ 4.  Fabletics has an e-commerce store located at

17    www.fabletics.com, and also operates more than 100 retail stores in 35 states

18    across the United States.  *Id.*

19    Fabletics offers a VIP Membership Program.  *Id.* ¶ 5.  Consumers **do not**

20    need to join the VIP Membership Program to purchase products from Fabletics –

21    either online or at its retail locations.  *Id.*  However, joining the VIP Membership

22    Program entitles members to multiple benefits, including: (i) 20-50% discounts off

23    of its retail prices; (ii) a monthly membership credit that can be exchanged for one

24    item, a two-piece outfit, or a multi-piece bundle (a "Promotional Membership

25    Credit"); (iii) free shipping; and (iv) early access to exclusive products.  *Id.*  There

26    is a fee associated with the VIP Membership Program, but VIP Members can skip

27    a month (or months) if they do not want to pay the fee.  *Id.*  For example,

28    Fabletics' records reflect that one of the named Plaintiffs, Kelli Langton, utilized

this skip a month feature at least 27 times while a VIP Member. *Id.* VIP Members can skip a month or cancel on-line, and Fabletics also provides 24/7 customer service (by phone or chat) to facilitate such requests. *Id.* Members who skip the month do not get all VIP Membership benefits that month, but also are not required to pay the monthly membership fee. *Id.* Many members use this function on a regular basis. *Id.* In addition, unused membership credits expire after twelve months, but members are notified before expiration, and, historically, Fabletics has reactivated expired credits upon request. *Id.*

### B.    Fabletics' Terms

All consumers who purchase any product (either online or at a retail location) and want the VIP Membership Program discount (and other benefits) must affirmatively accept the Fabletics Terms in order to complete their purchase. Fojut Decl. ¶ 7. On the "Review Order" page of the checkout flow, directly below the details of the VIP Membership Program and next to a check box, is the statement: "I accept the terms of the Fabletics VIP Membership Program." *Id.* & Ex. A. The words "Fabletics VIP Membership Program" appears in blue and are hyperlinked to the Fabletics Terms then in effect at all relevant times. *Id.* ¶ 8. If and when a customer clicks on any part of the blue words, the Terms are displayed on a new page and can be readily reviewed via scrolling or printing out the Terms. *Id.*

The Arbitration Agreement provides for the arbitration of "all Disputes" between Fabletics and the consumer, and contains a delegation clause:

> Except to the limited extent noted below, all Disputes shall be resolved by final, binding, and bilateral arbitration between you and Fabletics. … This arbitration agreement is subject to the Federal Arbitration Act and is enforceable pursuant to its terms on a self-executing basis. The parties agree that these Terms of Service

evidence transactions involving interstate commerce. If for whatever reason the rules and procedures of the FAA cannot apply, the state law governing arbitration agreements in the state in which you reside shall apply. The arbitrator (and not a court) shall determine any and all challenges to the arbitrability of a claim, including disputes about the scope, applicability, enforceability, revocability, or validity of this arbitration agreement. …

The parties agree that all related Disputes that can be arbitrated shall be arbitrated first, and any non-arbitrable Disputes shall be stayed until the completion of the arbitration.

*Id.* ¶ 15, Ex. G, pp.11-12.  The term "Disputes" is defined to mean "any controversy, claim or dispute arising out of or relating in any way to your use of the Fabletics Services, your membership in or purchases through the Fabletics Services, Fabletics VIP Membership Program and/or your Account, or products purchased through the Fabletics Services." *Id.*, p. 11.  The Fabletics Terms also has an opt-out provision, which states:

You may elect to opt-out (exclude yourself) from the final, binding arbitration procedure and the class action waiver specified in these Terms of Service by doing the following: within 15 days of setting up your Account, you must send a letter to Fabletics, LLC., c/o Legal Department, 800 Apollo Street, El Segundo, California 90245 that specifies: (1) your name, (2) your account number or account member name, (3) your mailing address, and (4) your request to be excluded from the

final, binding arbitration procedure and class action

waiver specified in these Terms of Service.

*Id.*, p. 13.  None of the named Plaintiffs opted out of the arbitration provision.  *Id.* ¶ 20.  The material terms of the Arbitration Agreement have remained unchanged since at latest 2019, which is the earliest time any of Plaintiffs alleges he or she joined the VIP Membership Program.[1]  *Id.* ¶¶ 6, 9.

### C.    Consumers Must Affirmatively Accept and Agree to Fabletics' Terms and Conditions In Order to Become a VIP Member

As stated above, while a consumer need not become a VIP member to purchase products from Fabletics, if they want the discount and other benefits of the VIP Membership Program, they are required to accept the Terms then in effect by clicking a check box.  *Id.* ¶ 17.  If the customer elects VIP Membership but fails to accept the terms of the VIP Membership Program by checking that box, they would get an error page, instructing the consumer that they must accept the Fabletics Terms in order to proceed.  *Id.*  The consumer could then elect to accept the Terms and proceed as a member of the VIP Membership Program, or complete the transaction without joining VIP Membership Program (and without the benefits provided by membership).

Before joining the VIP Membership Program and agreeing to its Terms, Plaintiffs were free to scroll through the Terms at their leisure, and to seek the input of an attorney or trusted advisor if they so chose.  *Id.* ¶ 18.  They were equally free to make a purchase without joining the VIP Membership Program and enjoying its benefits.  *Id.*  If they elected to proceed, however, Plaintiffs affirmatively had to manifest their consent to the Terms by checking the box next to "I accept."  *Id.*  This process has been in effect since, at latest, 2015.  *Id.* ¶ 7.

---

[1] The Arbitration Agreement has been the same since 2021.  The 2019 and 2020 versions of the Arbitration Agreement did differ from the later versions in some respects, but, as explained herein, those differences do not meaningfully impact the outcome of this motion.  Fojut Decl., ¶¶ 10-11, Exs. B-C.

Mitchell
Silberberg &
Knupp LLP

20568952

14

1  Because Plaintiffs each allege that they created VIP accounts between 2019, at the

2  earliest, and 2024, at the latest, and each bases their claim on features of the VIP

3  Membership program, each necessarily accepted the Fabletics Terms in effect at

4  the time of account creation.  *Id.* ¶ 19.  All of the applicable Terms during that time

5  period contain a mandatory arbitration provision.  *See id.* ¶¶ 9-16, Exs. B-G.

6  **D.**    **Plaintiffs' Allegations**

7  Plaintiffs allege that (1) the Promotional Membership Credits constitute gift

8  certificates that, under California's Gift Card Law, cannot legally expire; (2)

9  Fabletics does not adequately disclose that the VIP Membership Program renews

10  automatically, under California's Automatic Renewal Law or general principles of

11  fairness; and (3) Fabletics engaged in unfair or deceptive practices by claiming that

12  Promotional Membership Credits are worth "up to $100," when most Fabletics

13  products cost less than that amount.  *See generally* Compl.  Based on these

14  allegations, Plaintiffs assert claims under California's Gift Card Law, Cal. Civ.

15  Code § 1749.45 *et seq.*; California's Unfair Competition and False Advertising

16  Laws, Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*; and Florida's Deceptive

17  and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

18  **III.    ARGUMENT**

19  **A.**    **Federal Law Mandates Enforcement of the Arbitration**

20  **Agreement**

21  Plaintiffs' claims should be compelled to arbitration under the FAA.  The

22  FAA reflects a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v.*

23  *Concepcion*, 563 U.S. 333, 346 (2011).  The FAA applies to any "written . . .

24  contract evidencing a transaction involving commerce to settle by arbitration a

25  controversy thereafter arising out of such contract or transaction."  9 U.S.C. § 2.

26  The FAA requires courts to "move the parties to an arbitrable dispute out of court

27  and into arbitration as quickly and easily as possible," in order to effectuate the

28  parties' desire to use an alternative dispute resolution process and avoid the

Mitchell
Silberberg &
Knupp LLP
20568952

15

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

1   expense and inefficiencies of litigation.  *Preston v. Ferrer*, 552 U.S. 346, 357

2   (2008).  Here, the FAA governs the Arbitration Agreement for two independent

3   reasons.

4         ***First***, the Arbitration Agreement expressly states that it is governed by the

5   FAA.  Fojut Decl. ¶ 15, Ex. G, p. 12 ("[t]his arbitration agreement is subject to the

6   Federal Arbitration Act …"); *id.* ¶ 11, Ex. C, p. 10 (same).  This is itself sufficient

7   to bring this dispute within the contours of the FAA.  *See Volt Info. Scis., Inc. v.*

8   *Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Just

9   as [parties] may limit by contract the issues which they will arbitrate … , so too

10  may they specify by contract the rules under which that arbitration will be

11  conducted." (citation omitted)).  Courts apply the FAA—even absent evidence of

12  interstate commerce—if the parties so agree.  *See Ruiz v. CarMax Auto*

13  *Superstores, Inc.*, 2024 WL 1136332, at *2 (C.D. Cal. Jan. 18, 2024) ("the Court

14  finds that the FAA applies to the Agreements because it is expressly provided for")

15  (collecting cases).

16        ***Second***, the Arbitration Agreement is in writing, and the national scope of

17  Fabletics' business operations satisfies the "involving commerce" factor.  *See* Fojut

18  Decl. ¶¶ 21-22, Ex. I.  Courts have "interpreted the term 'involving commerce' in

19  the FAA" broadly, "as the functional equivalent of the more familiar term

20  'affecting [interstate] commerce'—words of art that ordinarily signal the broadest

21  permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v.*

22  *Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted).  The FAA "commerce"

23  threshold is low.  So long as a party is "engaged in business throughout [more than

24  one state]" or is generally engaged in a business with "broad impact … on the

25  national economy," arbitration agreements by that party are governed by the FAA.

26  *Id.* at 57-58.  Under this test, the FAA applies even if the particular contract or

27  transaction at issue does not affect interstate commerce, so long as the contracting

28

1    business implicates such commerce.  *See id.* at 56-58 (FAA applies to in-state-

2    contract "executed in Alabama by Alabama residents").

3         Fabletics unquestionably meets this low bar.  Fabletics operates on a

4    nationwide scale given its more than 100 retail stores across 35 states and its e-

5    commerce website.  Fojut Decl. ¶¶ 21-22.  Fabletics' website is Internet-based such

6    that users not only sign up for a VIP account online, they also shop online.  *Id.* ¶

7    22.  Transactions conducted via the Fabletics website involve instrumentalities of

8    interstate commerce.  *See S.S. by & through Stern v. Peloton Interactive, Inc.*, 566

9    F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) ("To the extent the contract pertains to

10   use of Peloton's Services (*e.g.*, its app, website, and on-demand fitness classes),

11   because those services require use of the Internet, the Agreement would involve

12   interstate commerce.").  Thus, the FAA applies.[2]

13       **B.**    **The FAA Compels Enforcement Of The Arbitration Agreement**

14        Under the FAA, defendants have a right to compel arbitration of

15   controversies within the scope of the agreement.  *See* 9 U.S.C. §§ 2, 4.  The FAA

16   provides that arbitration agreements "***shall*** be valid, irrevocable, and enforceable,

17   save upon such grounds as exist at law or in equity for the revocation of any

18   contract."  9 U.S.C. § 2 (emphasis added); *see also Am. Exp. Co. v. Italian Colors*

19   *Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration

20   agreements according to their terms."); *Chiron Corp. v. Ortho Diagnostic Sys.,*

21   *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (same).  Indeed, "the [FAA] leaves no

22   place for the exercise of discretion by a [trial] court, but instead mandates that

23   [trial] courts ***shall*** direct the parties to proceed to arbitration on issues as to which

24   _____

25   [2] Of course, even if state law governed, the result would be the same under the
     CAA or the Florida Arbitration Code.  *See Cable Connection, Inc. v. DIRECTV,*

26   *Inc.*, 44 Cal. 4th 1334, 1343 (2008) ("In most important respects, the California
     statutory scheme on enforcement of private arbitration agreements is similar to the

27   [FAA] ….."); *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094,
     1097 (11th Cir. 2003) ("The Florida Arbitration Code is substantially similar to the

28   FAA and the Uniform Arbitration Act.").

1    an arbitration agreement" applies.  *Dean Whitter Reynolds, Inc. v. Byrd*, 470 U.S.

2    213, 218 (1985) (emphasis in original).[3]  "[A]ny doubts concerning the scope of

3    arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l*

4    *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

5         A court's involvement in assessing an arbitration provision is generally

6    limited to two questions: "(1) whether a valid agreement to arbitrate exists and, if it

7    does; (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp.*,

8    207 F.3d at 1131.  Parties, however, "can agree to arbitrate 'gateway' questions of

9    'arbitrability,' such as whether the parties have agreed to arbitrate or whether their

10   agreement covers a particular controversy."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561

11   U.S. 63, 68-69 (2010).  Thus, "[w]hen the parties have 'clearly and unmistakably'

12   delegated questions regarding arbitrability to the arbitrator, … the court 'need not

13   conduct further inquiries beyond the existence of the arbitration agreement.'"

14   *Juarez v. T-Mobile USA Inc.*, 2024 WL 5424366, at *2 (C.D. Cal. Aug. 23, 2024)

15   (citations omitted).

16                    **1.    Plaintiffs Each Agreed To The Terms**

17        "[C]ourts routinely find clickwrap agreements enforceable."[4]  *Scribner v.*

18   *Trans Union LLC*, 738 F. Supp. 3d 1301, 1307-08 (E.D. Cal. 2024) (enforcing

19   _____

20   [3] The same is true under the CAA and the Florida Arbitration Code.  *See EFund*
     *Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1320 (2007) ("California has a
21   strong public policy in favor of arbitration.");  *Hagstrom v. Co.Fe.Me. USA Marine*
     *Exhaust, LLC*, 322 So. 3d 145, 147 (Fla. Dist. Ct. App. 2021) ("Recognizing
22   'strong public policy' considerations, Florida law has historically favored
     agreements to resolve disputes by arbitration.").

23   [4] The same is true under Florida and California law.  *See Valiente v. StockX, Inc.*,
     645 F. Supp. 3d 1331, 1338-39 (S.D. Fla. 2022) ("'In Florida and the federal
24   circuits … click-wrap agreements are valid and enforceable contracts.'") (citations
     omitted) (enforcing arbitration provision in terms of service); *Massage Envy*
25   *Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App. 2022)
     (enforcing "clickwrap agreement" with arbitration provision where customer "was
26   required to click a box stating, 'I agree and assent to the Terms of Use Agreement,'
     which attached the TOU via hyperlink."); *Weeks v. Interactive Life Forms, LLC*,
27   100 Cal. App. 5th 1077, 1084-85 (2024) ("Courts have generally enforced
     agreements to arbitrate formed via 'clickwrap,' where an internet user accepts a
28   website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to

arbitration provision in terms of use).  A "clickwrap" agreement is an agreement "in which website users are required to click on an 'I agree' box after being presented with a list of the terms and conditions of use."[5]  *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).

Here, Fabletics formed an agreement to arbitrate with each named Plaintiff when each agreed to and accepted the Fabletics Terms.  Specifically, each named Plaintiff affirmatively accepted the Fabletics Terms, including its Arbitration Agreement, when they clicked the box stating "I accept the terms of the Fabletics VIP Membership Program."  The terms of the Fabletics VIP Membership Program are hyperlinked in the very same line as the "I accept" button.  Fojut Decl. ¶¶ 7-8. In addition, the hyperlink was emphasized in blue (*id.* ¶ 8), thus "indicating to users that [it was] clickable."  *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020).

Accordingly, Fabletics and Plaintiffs formed an enforceable agreement to arbitrate all claims in this lawsuit.  *See Mejia v. TruthFinder, LLC*, 2022 WL 5236828, at *4 (S.D. Cal. Oct. 5, 2022) (sworn statements that customer could not have completed purchase without accepting terms "constitute sufficient evidence to demonstrate that Plaintiff agreed to the Terms"); *Falls v. Soulbound Studios, LLC*, 2021 WL 4295137, at *2 (C.D. Cal. July 6, 2021) (Wilson, J.) ("Courts enforce internet contracts where the website contains 'an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound'"; enforcing arbitration agreement where evidence showed that all consumers were

_____

the agreement readily available."); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021) ("clickwrap agreements … are generally considered enforceable").

[5] Where, like here, the terms are hyperlinked, courts sometimes refer to the agreements as "modified" clickwrap agreements, "hybrid design," or "sign-in wrap" agreements.  *See Moyer v. Chegg, Inc.*, 2023 WL 4771181, at *4 & n.1 (N.D. Cal. July 25, 2023).  Such agreements are also routinely enforced where, as here, "the existence of the terms was reasonably communicated to the user."  *Id.* at *4 (collecting cases); *see also Zamber v. Am. Airlines, Inc.*, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) ("so-called 'clickwrap' agreements or hybrid clickwrap-browsewrap agreements are both routine and enforceable").

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

1  presented with terms "via hyperlink at the time of the checkout") (citation

2  omitted); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910, 912 (N.D.

3  Cal. 2011) (enforceable agreement to arbitrate formed when consumer clicked "I

4  Accept" button, indicating acceptance of hyperlinked terms of service agreement,

5  in order to log on to play an online game).

6       As stated above, there is no doubt that each of the Plaintiffs agreed to the

7  written Arbitration Agreement in the Fabletics Terms (Fojut Decl. ¶¶ 17-19),

8  which is a valid and enforceable contract.  In addition to Plaintiffs' affirmative

9  assent, Fabletics provided Plaintiffs ample opportunity to review the Terms, and

10  for 15 days after accepting such terms, to opt out of the arbitration provision.  *Id.*,

11  ¶¶ 18, 20; *see id.*, Ex. C, p. 11; *id.*, Ex. G, p. 13.  Plaintiffs did not opt out of the

12  Arbitration Agreement (*id.* ¶ 20), further evidencing their consent to be bound by

13  its terms.

14       **2.    The Terms Contain a Delegation Provision That Delegates**

15       **Disputes Over the Arbitrability of Plaintiffs' Claims to the**

16       **Arbitrator.**

17       Where, as here, an arbitration agreement delegates questions of arbitrability

18  to the arbitrator, "questions regarding the enforceability and validity of the

19  Agreement *as a whole* fall to the arbitrator, not the Court."[6]  *Ensambles Hyson,*

20  *S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1269 (S.D. Cal. 2024) (emphasis in

21  original); *see also Ahern v. Fiserv, Inc.*, 2023 WL 8945697, at *4 (C.D. Cal. Dec.

22  8, 2023) ("As an initial matter, the Court must decide whether the Agreement

23  delegates arbitrability to the arbitrator under the delegation clause. … If the

---

24

25  [6] California and Florida law also recognize the parties' ability to delegate questions of arbitrability to the arbitrator.  *See Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 240 (2014) (California courts "have specifically looked to the FAA when considering delegation clauses … and have long held that the rules governing these clauses are the same under both state and federal law" (citation omitted)); *Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. Dist. Ct. App. 2017) ("While arbitrability is generally an issue for trial courts to decide, courts must delegate the authority to the arbitrator if the parties' contract so provides.")

26

27

28

Mitchell
Silberberg &
Knupp LLP

20568952

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

1  delegation clause is enforceable, all other questions regarding the validity of the

2  arbitration agreement must go to the arbitrator to decide in the first instance.").

3  There are two requirements for a delegation clause to be effective: (1) "the

4  language of the clause must be clear and unmistakable"; and (2) "the delegation

5  must not be revocable under state contract defenses such as fraud, duress, or

6  unconscionability." *Manfredi v. Vivint Solar Developer LLC*, 2021 WL 8441831,

7  at \*2 (C.D. Cal. Sept. 24, 2021).  Both requirements clearly are met here.

8            **a.**      **The Delegation Provision Is Clear and Unmistakable**

9       The Arbitration Agreement includes a delegation clause, which states: "The

10  arbitrator (and not a court) shall determine any and all challenges to the

11  arbitrability of a claim, including disputes about the scope, applicability,

12  enforceability, revocability, or validity of this arbitration agreement."[7]  Fojut Decl.,

13  Ex. G, p. 12.  This language unambiguously delegates to the arbitrator questions of

14  arbitrability and constitutes "clear and unmistakable" evidence that the parties

15  intended to arbitrate these gateway questions of arbitrability.  *See, e.g.*, *Bielski v.*

16  *Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023) (enforcing delegation clause

17  providing "[t]his Arbitration Agreement includes, without limitation, disputes

18  arising out of or related to the interpretation or application of the Arbitration

19  Agreement, including the enforceability, revocability, scope, or validity of the

20  Arbitration Agreement or any portion of the Arbitration Agreement"); *Momot v.*

21  *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (language delegating to the arbitrators

22  the authority to determine "the validity or application of any of the provisions of"

23  the arbitration clause constituted "clear and unmistakable evidence" of an

24  agreement to arbitrate the question of arbitrability); *Rendon v. T-Mobile USA, Inc.*,

25  747 F. Supp. 3d 1314, 1320 (C.D. Cal. 2024), *reconsideration denied*, No. 2024

26

27  _____

[7] The 2019 and 2020 version of the Arbitration Agreement contained a functionally identical delegation provision:  "The arbitrator shall determine any and all challenges to the arbitrability of a claim."  Fojut Decl., Ex. B, p. 10; *id.*, Ex. C, p. 11.

28

1   WL 5256491 (C.D. Cal. Nov. 4, 2024) (same where language in terms and

2   conditions delegated to the arbitrator the authority to determine "any issues

3   concerning the existence, validity, or scope of either this Agreement or the

4   arbitration clause, including whether any claim is subject to arbitration").

5        While the parties' express delegation is manifest (and the contractual

6   language even clearer than the cited cases), "[t]he incorporation of professional

7   arbitration rules that delegate the questions of arbitrability can [itself] constitute

8   'clear and unmistakable' evidence that the parties intended to delegate that

9   question." *Galen v. Redfin Corp.*, 2015 WL 7734137, at \*6 (N.D. Cal. Dec. 1,

10  2015). Here, the Arbitration Agreement provides that the arbitration "shall be

11  subject to ADR Services' most current version of its Arbitration Rules, available at

12  https://www.adrservices.com/services/arbitration-rules or by calling ADR Services

13  at 310-201-0010." Fojut Decl., Ex. G, p. 11. ADR Services' Arbitration Rules

14  expressly provide that the arbitrator "shall have the power to rule on his or her own

15  jurisdiction, including any objections with respect to the existence, scope, or

16  validity of the arbitration agreement." Declaration of Bradley J. Mullins ("Mullins

17  Decl."), Ex. A, p. 5; *id.*, Ex. B, p. 6.[8] This is further evidence that the parties

18  intended to contractually delegate issues of arbitrability to the arbitrator. *See, e.g.*,

19  *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. 2017) (Uber's

20  arbitration agreement in its terms and conditions, which incorporated the AAA

21  Commercial Arbitration Rules, constituted "clear and unmistakable evidence of the

22  parties' intent to delegate questions of arbitrability to an arbitrator" where the

23  AAA rule provided that "The arbitrator shall have the power to rule on his or her

24  own jurisdiction, including any objections with respect to the existence, scope, or

25  _____

26  [8] In 2019 and 2020, the Arbitration Agreement provided that arbitration should be
    conducted pursuant to American Arbitration Association rules, which also
27  expressly delegated authority to determine arbitrability to the arbitrator. Mullins
    Decl., ¶¶ 4-5, Exs. C-D; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th
28  Cir. 2015) ("incorporation of the AAA rules constitutes clear and unmistakable
    evidence that contracting parties agreed to arbitrate arbitrability").

1  validity of the arbitration agreement or to the arbitrability of any claim or

2  counterclaim").

3          **3.        The Delegation Provision Is Not Fraudulent, Was Not**

4                  **Obtained Under Duress, and Is Not Unconscionable**

5          "[T]he party opposing arbitration bears the burden of proving any defense,

6  such as unconscionability."  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260

7  (9th Cir. 2017).  Here, the analysis focuses on the delegation agreement itself, not

8  the overall agreement.  *Falls*, 2021 WL 4295137, at *3 ("When an arbitration

9  agreement delegates the question of arbitrability to the arbitrator, as here, ... a

10  party opposing arbitration may only challenge the delegation provision itself as

11  unconscionable.").  There is no evidence that suggests that the delegation provision

12  was fraudulent, obtained under duress, or is unconscionable.  "[B]oth procedural

13  and substantive unconscionability must be present for an agreement to be

14  unenforceable."  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir.

15  2016) (internal quotations omitted).  Procedural unconscionability focuses on

16  "oppression or surprise due to unequal bargaining power" while substantive

17  unconscionability focuses on "overly harsh" or "one-sided" contracts that "shock

18  the conscience."  *Poublon*, 846 F.3d at 1260-61.

19          Initially, the delegation provision is not procedurally unconscionable.

20  Before joining the VIP Membership Program and agreeing to its Terms, Plaintiffs

21  were free to scroll through the Terms at their leisure, and to seek the input of an

22  attorney or trusted advisor if they so chose.  Fojut Decl. ¶ 18.  Plaintiffs were

23  equally free not to continue with joining the VIP Membership Program, which was

24  **not required** in order to purchase a product.  *Id.*  Each of the named Plaintiffs,

25  however, chose to proceed and manifested their assent to the Terms by checking

26  the "I accept" box.  *Id.* ¶¶ 18-19.  Further, Plaintiffs were afforded ample

27  opportunity to opt out of the Arbitration Agreement, including its delegation

28  provision, within 15 days of accepting the Terms, but chose not to do so.  *Id.* ¶ 20;

*see id.*, Ex. C, p. 11; *id.*, Ex. G, p. 13; *see also Paxton v. Macy's W. Stores, Inc.*, 2018 WL 4297763, at *7 (E.D. Cal. Sept. 7, 2018) ("the Ninth Circuit, applying California law, has found that arbitration clauses providing an opt-out period of sufficient duration are not procedurally unconscionable"); *Vega v. Tempoe, LLC*, 2021 WL 3615913, at *3 (C.D. Cal. Apr. 16, 2021) (finding that arbitration agreement was not procedurally unconscionable where the plaintiff "was given 15 days to investigate the [agreement] which was ample opportunity to decide whether to opt out of the Arbitration Provision.").[9]

Given the lack of procedural unconscionability, the Court need not reach the question of substantive unconscionability. *Prizler v. Charter Commc'ns, LLC*, 2019 WL 2269974, at *4 (S.D. Cal. May 28, 2019). Regardless, Plaintiffs cannot point to anything in the delegation provision that would "shock the conscience" such that it would be substantively unconscionable. *See, e.g.*, *Alkutkar v. Bumble Inc.*, 2022 WL 4112360, at *10 (N.D. Cal. Sept. 8, 2022) (where agreement "does not impose unfair terms" and "does not shock the conscience[,]" "[t]he delegation provision is not substantively unconscionable.").

Accordingly, the Court should compel this case to arbitration to allow the arbitrator to decide all gateway questions of arbitrability, including whether the Arbitration Agreement is valid and enforceable and whether Plaintiffs' claims fall within the Arbitration Agreement's scope. This should be the end of the inquiry.

## C. The Two Questions of Arbitrability Have Been Satisfied

Even if the Court were to find that it, and not an arbitrator, should determine the question of arbitrability despite the delegation clause (it should not), the Court should nonetheless compel arbitration. As previously noted, the Court need only consider two questions: "(1) whether a valid agreement to arbitrate exists and, if it

---

[9] The same is true under Florida law. *See Suarez v. Uber Techs., Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017) ("there is no procedural unconscionability because Plaintiffs had the absolute right to opt out of the Arbitration Provision.") (applying Florida law).

does, (2) whether the agreement encompasses the dispute at issue." [10] *Chiron Corp.*, 207 F.3d at 1130.

As set forth above, a valid agreement to arbitrate clearly exists here. *See supra*, at pp. 18-20. As to the second question, "[a]bsent some ambiguity in the agreement … it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Here, there is no ambiguity that the Arbitration Agreement requires that all of Plaintiffs' claims be subject to arbitration. Specifically, Plaintiffs agreed that the Arbitration Agreement would apply to "all Disputes" between Fabletics and the consumer, meaning "any controversy, claim or dispute arising out of or relating **in any way to** your use of the Fabletics Services, your membership in or purchases through the Fabletics Services, **Fabletics VIP Membership Program** and/or your Account, or products purchased through the Fabletics Services." Fojut Decl., Ex. G, p. 11 (emphasis added); *see also id.*, Ex. B, p. 10 (similar); *id.*, Ex. C, p. 9 (similar). In the Complaint, Plaintiffs allege various conduct by Fabletics relating to the VIP Membership Program and Promotional Membership Credits. Compl., ¶¶ 19-29, 36-111. This dispute falls squarely within the scope of the Arbitration Agreement. *See Chiron Corp.*, 207 F.3d at 1131 ("little doubt that the dispute [was] subject to arbitration" where agreement covered "[a]ny dispute, controversy or claim").

Thus, even if the Court looks past the delegation clause (which it should not), the result would be the same.

---

[10] Although the Arbitration Agreement is governed by the FAA, courts considers the same two questions under the CAA. *See Vigueras v. Red Robin Int'l, Inc.*, 2019 WL 1425887, at *5 n.3 (C.D. Cal. Feb. 21, 2019) (the CAA "mirrors the FAA in that it requires courts to compel arbitration of any controversy covered by the terms of a valid written arbitration agreement"). Florida law is similar. *See Greenbrook NH, LLC v. Est. of Sayre, ex rel. Raymond*, 150 So. 3d 878, 881 (Fla. Dist. Ct. App. 2014) ("In assessing the enforceability of an arbitration agreement, we inquire '(1) whether there is a valid written agreement to arbitrate, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived.'" (citation omitted)).

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

Mitchell
Silberberg &
Knupp LLP

20568952

## IV.    THE COURT SHOULD DISMISS PLAINTIFFS' CLASS ALLEGATIONS

Here, Plaintiffs purport to bring claims both individually, and on behalf of various classes of purportedly similarity situated consumers.  Plaintiffs' individual claims, however, are each subject to the Arbitration Agreement for the reasons discussed above.  That Arbitration Agreement does not provide for class-wide arbitration; quite to the contrary, it expressly requires that arbitration proceed on an "individualized basis[.]"  Fojut Decl., Ex. G, p. 13; *see also id.*, Ex. B, pp. 9-10 (similar); *id.*, Ex. C, p. 11 (similar).  "[C]ourts may not infer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party *agreed* to do so.'"  *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) (emphasis in original) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)).  Here, the parties did the opposite, and there is therefore no basis to compel arbitration of Plaintiff's class-wide claims.  Further, "cases consistently hold that a named class representative that has been compelled to arbitration can no longer serve as a class representative."  *Diaz v. Nexa Mortg., LLC*, 2024 WL 4458545, at *3 (S.D. Cal. Oct. 7, 2024) (collecting cases).  Since each of Plaintiffs' individual claims must be decided in individual arbitration, "Plaintiff[s] cannot continue to serve as class representative[s] of the putative class.  *Yun Park v. MSX Americas, Inc.*, 2019 WL 5285446, at *5 (C.D. Cal. Oct. 9, 2019).  Plaintiffs' class allegations should therefore be dismissed.  *See Correa v. A2 Railla Dev., Inc.*, 2023 WL 6783987, at *11 (C.D. Cal. Apr. 7, 2023) (finding that "dismissal of the class claims … is appropriate" where individual plaintiff is compelled to arbitration).

## V.    CONCLUSION

For the foregoing reasons, the Court should compel arbitration, dismiss Plaintiffs' class allegations, and stay the remainder of this action.

1

DATED: May 19, 2025                    SETH E. PIERCE
                                       BRADLEY J. MULLINS
2                                      REBECCA BENYAMIN
                                       MITCHELL SILBERBERG & KNUPP LLP
3

4
                                       By: /s/ Bradley J. Mullins
5                                          Bradley J. Mullins
                                           Attorneys for Defendant
6                                          Fabletics, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Fabletics, Inc.'s Notice of Motion and Motion to Compel Arbitration, certifies that this brief contains 5,681 words, which:

☑ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order.

Dated: May 19, 2025                    By: /s/ Bradley J. Mullins
                                            Bradley J. Mullins

Mitchell
Silberberg &
Knupp LLP

20568952

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**